**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MATTHEW GALVIN BANWART, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 1:21-cv-00155 |
| | ) | |
| BANK OF AMERICA, N.A., | ) | |
| | ) | |
| Defendant. | ) | **JURY DEMAND** |

**COMPLAINT**

**INTRODUCTION**

1.      Plaintiff Matthew Galvin Banwart, brings this action against Defendant Bank of America, N.A. to secure redress for the Bank's actions in refusing to credit an unauthorized electronic fund transfer made from Plaintiff's account at the Bank.  Plaintiff alleges violation of the Electronic Fund Transfer Act, 15 U.S.C. §1693 et seq., and state law.

**JURISDICTION AND VENUE**

2.      This Court has jurisdiction under 28 U.S.C. §1331 (general federal question) and 28 U.S.C. §1337 (supplemental jurisdiction) and 15 U.S.C. §1693m(g) (Electronic Funds Transfer Act).

3.      Venue in this District is proper because the material events in question occurred here.

**PARTIES**

4.      Plaintiff Matthew Galvin Banwart, resides in the Northern District of Illinois.

5.      Defendant Bank of America, N.A. is a federally chartered banking corporation with its principal place of business at  100 N. Tryon St., Charlotte, NC 28202.  It does business in Illinois and has over 100 locations in Illinois, including one at 135 South LaSalle Street, Chicago, IL 60603.

-1-

## FACTS

6.      Prior to July 30, 2020, Plaintiff had a deposit account at Bank of America, N.A., which Plaintiff used for personal, family or household purposes and not for business purposes.

7.      On July 30, 2020, Plaintiff went to a Bank of America ATM at 3150 N. Clark Street, Chicago, Illinois (Clark and Barry) to withdraw money.  He was doing so when a male entered the ATM area and stated that he could not use his card at the outside ATM.  He put his card in and showed Plaintiff that it didn't work, and then told Plaintiff to put his card in.  Plaintiff put in his card to show the man that the ATM worked.  The man then compelled Plaintiff to stand aside and appeared to deposit a check in Plaintiff's account for $900.  The man then ordered Plaintiff to put Plaintiff's card in again, forced Plaintiff to enter the PIN, and withdrew $800.

8.      When the man left, Plaintiff immediately notified Bank of America, N.A., and the Chicago police.  Plaintiff filed a police report. (Exhibit A).

9.      Bank of America, N.A. acknowledged Plaintiff's report and requested information about what had happened, which Plaintiff provided.

10.     Bank of America, N.A. refused to reimburse Plaintiff for the funds, as shown by the letters of August 13, 2020 (Appendix A) and September 30, 2020 (Appendix B).

## VIOLATIONS OF THE ELECTRONIC FUNDS TRANSFER ACT

11.     The debit made by the thief is an "unauthorized electronic fund transfer" as defined in the Electronic Funds Transfer Act, 15 U.S.C. §1693 et seq. ("EFTA") and implementing Regulation E, 12 C.F.R. part 1005.

12.     Under 12 C.F.R. §1005.2(m), an "unauthorized electronic fund transfer" is "an electronic fund transfer from a consumer's account initiated by a person other than the consumer without actual authority to initiate the transfer and from which the consumer receives no benefit. The term does not include an electronic fund transfer initiated: (1) By a person who was furnished the access device to the consumer's account by the consumer, unless the consumer has

notified the financial institution that transfers by that person are no longer authorized; (2) With

fraudulent intent by the consumer or any person acting in concert with the consumer; or (3) By

the financial institution or its employee." An "access device" includes a PIN or other code.

13.    Under 12 C.F.R. part 1005 Supp I, par. 2(m)3, which is a regulation issued

pursuant to notice and comment rulemaking that has the force and effect of law, "An

unauthorized EFT includes a transfer initiated by a person who obtained the access device from

the consumer through fraud or robbery."

14.    The criminal who victimized Plaintiff obtained the access device from Plaintiff

through robbery.

15.    Under 12 C.F.R. §1005.6(b)(1), "If the consumer notifies the financial institution

within two business days after learning of the loss or theft of the access device, the consumer's

liability shall not exceed the lesser of $50 or the amount of unauthorized transfers that occur

before notice to the financial institution."

16.    Plaintiff gave notice to Bank of America, N.A. within two business days.

17.    Under 15 U.S.C. §1693f, "error resolution":

(a)Notification to financial institution of error

If a financial institution, within sixty days after having transmitted to a consumer
documentation pursuant to section 1693d(a), (c), or (d) of this title or notification
pursuant to section 1693d(b) of this title, receives oral or written notice in which the
consumer—

> (1)    sets forth or otherwise enables the financial institution to identify the
> name and account number of the consumer;

> (2)    indicates the consumer's belief that the documentation, or, in the case of
> notification pursuant to section 1693d(b) of this title, the consumer's
> account, contains an error and the amount of such error; and

> (3)    sets forth the reasons for the consumer's belief (where applicable) that an
> error has occurred,

the financial institution shall investigate the alleged error, determine whether an error has
occurred, and report or mail the results of such investigation and determination to the
consumer within ten business days. The financial institution may require written
confirmation to be provided to it within ten business days of an oral notification of error
if, when the oral notification is made, the consumer is advised of such requirement and

the address to which such confirmation should be sent. A financial institution which requires written confirmation in accordance with the previous sentence need not provisionally recredit a consumer's account in accordance with subsection (c), nor shall the financial institution be liable under subsection (e) if the written confirmation is not received within the ten-day period referred to in the previous sentence.

(b)     Correction of error; interest

If the financial institution determines that an error did occur, it shall promptly, but in no event more than one business day after such determination, correct the error, subject to section 1693g of this title, including the crediting of interest where applicable.

(c)     Provisional recredit of consumer's account

If a financial institution receives notice of an error in the manner and within the time period specified in subsection (a), it may, in lieu of the requirements of subsections (a) and (b), within ten business days after receiving such notice provisionally recredit the consumer's account for the amount alleged to be in error, subject to section 1693g of this title, including interest where applicable, pending the conclusion of its investigation and its determination of whether an error has occurred. Such investigation shall be concluded not later than forty-five days after receipt of notice of the error. During the pendency of the investigation, the consumer shall have full use of the funds provisionally recredited.

(d)     Absence of error; finding; explanation

If the financial institution determines after its investigation pursuant to subsection (a) or (c) that an error did not occur, it shall deliver or mail to the consumer an explanation of its findings within 3 business days after the conclusion of its investigation, and upon request of the consumer promptly deliver or mail to the consumer reproductions of all documents which the financial institution relied on to conclude that such error did not occur. The financial institution shall include notice of the right to request reproductions with the explanation of its findings.

(e)     Treble damages

If in any action under section 1693m [1] of this title, the court finds that—

    (1)     the financial institution did not provisionally recredit a consumer's account within the ten-day period specified in subsection (c), and the financial institution (A) did not make a good faith investigation of the alleged error, or (B) did not have a reasonable basis for believing that the consumer's account was not in error; or

    (2)     the financial institution knowingly and willfully concluded that the consumer's account was not in error when such conclusion could not reasonably have been drawn from the evidence available to the financial institution at the time of its investigation,

then the consumer shall be entitled to treble damages determined under section 1693m(a)(1) 1 of this title.

(f)     Acts constituting error

-4-

For the purpose of this section, an error consists of—

(1)     an unauthorized electronic fund transfer; . . .

18.     Under the EFTA, 15 U.S.C. §1693g(b), in "any action which involves a consumer's liability for an unauthorized electronic fund transfer, the burden of proof is upon the financial institution to show that the electronic fund transfer was authorized[.]"

19.     Bank of America, N.A. is regulated by the Office of the Comptroller of the Currency ("OCC").

20.     The OCC, in the "Electronic Fund Transfer Act" section of the Comptroller's Handbook, states that the mere fact that the consumer's PIN was used does not constitute a basis for the bank denying a claim of unauthorized transactions.  The Handbook states that the "OCC is concerned that some institutions may be rejecting claims of unauthorized transactions solely because the customer's ATM card or debit card and PIN were used in the transaction, and the customer supplied no information indicating that the card or PIN was misappropriated."  The OCC explained that the fact that a customer's PIN and debit card were used "may be insufficient to establish that a transaction was authorized because fraudulent means may have been used to obtain the customer's account number, card, or PIN." Concluding that "institutions cannot assume that they have satisfied their duty to investigate simply by concluding that the customer's debit card and PIN were used in the transaction at issue[,]" the OCC laid out steps that national banks should take to determine whether transactions are authorized, including but not limited to "[h]istorical information on the customer's pattern of use[,]" "[l]ocation of the transaction in relation to the customer's residence, place of business, or normal shopping locations[,]" the customer's "location at the time of the unauthorized transaction[,]" and "[f]ilm from security cameras[.]" The OCC also clarified that while an "institution may request a customer's reasonable cooperation in any such investigation[,]" the institution may not "deny a claim of error based solely on the cardholder's failure to comply with such a request."

21.     Bank of America, N.A. did not conduct a reasonable investigation of Plaintiff's

claim and had no basis for denying Plaintiff reimbursement.

22.     Furthermore, the acts of Bank of America, N.A. had the effect of holding Plaintiff liable for more than $50 for an unauthorized electronic fund transfer.

23.     On December 11, 2020, Plaintiff requested the documents on which Bank of America, N.A., relied in making its determination not to reimburse Plaintiff.

24.     Bank of America, N.A., has not responded.

## COUNT I – ELECTRONIC FUNDS TRANSFER ACT

25.     Plaintiff incorporates paragraphs 1-24.

26.     Under 15 U.S.C. §1693m:

(a)     Individual or class action for damages; amount of award

Except as otherwise provided by this section and section 1693h of this title, any person who fails to comply with any provision of this subchapter with respect to any consumer, except for an error resolved in accordance with section 1693f of this title, is liable to such consumer in an amount equal to the sum of—

    (1)     any actual damage sustained by such consumer as a result of such failure;

    (2)

        (A)     in the case of an individual action, an amount not less than $100 nor greater than $1,000; . . .

    (3)     in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court.

(b)     Factors determining amount of award

In determining the amount of liability in any action under subsection (a), the court shall consider, among other relevant factors—

    (1)     in any individual action under subsection (a)(2)(A), the frequency and persistence of noncompliance, the nature of such noncompliance, and the extent to which the noncompliance was intentional; . . .

WHEREFORE, the Court should enter judgment in favor of Plaintiff and against Defendant for:

        i.     Actual damages;

        ii.     Statutory damages;

      iii.     Treble damages;

      iv.     Attorney's fees, litigation expenses and costs of suit;

      v.     Such other or further relief as the Court deems proper.

## COUNT II – ILLINOIS CONSUMER FRAUD ACT

27.     Plaintiff incorporates paragraphs 1-24.

28.     Bank of America, N.A., engaged in unfair and deceptive acts and practices, in violation of 815 ILCS 505/2, by (a) disregarding its obligations the Electronic Funds Transfer Act, (b) failing to reasonably investigate Plaintiff's claim, (c) falsely asserting that Plaintiff had authorized the transactions at issue.

29.     Bank of America, N.A., engaged in such conduct in the course of trade and commerce in financial services.

30.     Bank of America, N.A., intended to deprive Plaintiff of money through such conduct.

WHEREFORE, the Court should enter judgment in favor of Plaintiff and against Defendant  for:

      i.     Actual damages;

      ii.     Punitive damages;

      iii.     Attorney's fees, litigation expenses and costs;

      iv.     Such other or further relief as the Court deems proper.

*/s/ Daniel A. Edelman*
Daniel A. Edelman

Daniel A. Edelman
Cathleen M. Combs
Tara L. Goodwin
Carly Cengher
**EDELMAN, COMBS, LATTURNER
    & GOODWIN, LLC**
20 South Clark Street, Suite 1500
Chicago, IL 60603-1824
(312) 739-4200
(312) 419-0379 (FAX)

Email address for service:
courtecl@edcombs.com

## **JURY DEMAND**

Plaintiff demands trial by jury.

*/s/ Daniel A. Edelman*
Daniel A. Edelman

## <u>NOTICE OF LIEN AND ASSIGNMENT</u>

Please be advised that we claim a lien upon any recovery herein for 1/3 or such amount as a court awards.   All rights relating to attorney's fees have been assigned to counsel.


*/s/ Daniel A. Edelman*
Daniel A. Edelman


Daniel A. Edelman
EDELMAN, COMBS, LATTURNER
      & GOODWIN, LLC
20 S. Clark Street, Suite 1500
Chicago, Illinois  60603
(312) 739-4200
(312) 419-0379 (FAX)

## **DOCUMENT PRESERVATION DEMAND**

Plaintiff hereby demands that defendant take affirmative steps to preserve all recordings, data, documents, and all other tangible things that relate to plaintiff, the events described herein, any third party associated with any telephone call, campaign, account, sale or file associated with plaintiff, and any account or number or symbol relating to them. These materials are likely very relevant to the litigation of this claim. If defendant is aware of any third party that has possession, custody, or control of any such materials, plaintiff demands that defendant request that such third party also take steps to preserve the materials. This demand shall not narrow the scope of any independent document preservation duties of the defendant.

*/s/ Daniel A. Edelman*
Daniel A. Edelman